**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER CARL MEIER,

    Defendant - Appellant.

No. 24-1480

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CR-00419-RMR-1)**

_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Kyle W. Brenton, Assistant U.S. Attorney (Peter McNeilly, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

    Christopher Meier pleaded guilty to one count of conspiracy to distribute child pornography and five substantive counts of distributing child pornography.

Ordinarily, Mr. Meier's offense level would have been calculated under § 2G2.2 of

the U.S. Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.").  But the district court applied a provision that instructs the court to instead calculate the offense level under the section applicable to production of child pornography, § 2G2.1.  That provision comes into play if (1) the offense involved production of child pornography, and (2) the defendant's § 2G2.1 offense level would be higher than his § 2G2.2 offense level.  *See* U.S.S.G. § 2G2.2(c)(1) (the "Production Cross Reference").  The district court found that Mr. Meier had screen-captured the videos he distributed online—videos of unwitting minor boys masturbating over Skype calls.  The facts on which the court relied included captions and victim accounts suggesting that Mr. Meier enticed his victims by pretending to be a young female, including by sending nude or sexual videos he had acquired, although none of those so-called bait-girl videos were recovered by law enforcement.

Mr. Meier disputed before the district court that he had produced any of the child pornography he had distributed but did not challenge the fact that his offense level was higher under § 2G2.1 for each substantive count.  On appeal, Mr. Meier argues that it was plain error to apply the Production Cross Reference because his offense level should have been equal or higher under § 2G2.2 for each substantive count.  In particular, he argues that the court clearly or obviously erred by *not* applying an enhancement under § 2G2.2(b)(3)(E) for distribution of child pornography to entice a minor to engage in sexual activity (the "(b)(3)(E) enhancement").  He argues that facts adopted by the court clearly and obviously should have triggered that enhancement, making his offense level equal or higher

under § 2G2.2 and thus defeating application of the Production Cross Reference. Applying the (b)(3)(E) enhancement, counterintuitively, would have yielded a lower Guidelines range because the Chapter 3 grouping rules treat § 2G2.1 counts more punitively than § 2G2.2 counts.

We conclude that Mr. Meier has not satisfied the second prong of the plain-error standard. More specifically, we do not see, in the portions of the record that Mr. Meier cited, the factual findings that he perceives. In particular, we do not agree that the district court found with respect to any bait-girl video that the girl was both underage *and* engaging in qualifying sexual conduct. It was therefore not clear or obvious error for the district court to refrain from applying the (b)(3)(E) enhancement. We therefore **affirm** the district court's judgment and sentence.

**I**

**A**

Christopher Meier pleaded guilty to one count of conspiracy to distribute child pornography and five substantive counts of distribution, all in violation of 18 U.S.C. § 2252A. The substantive counts were for images and video links that Mr. Meier posted on a child pornography website. The conspiracy charge encompassed these and other child pornography videos he posted.

Mr. Meier's Presentence Investigation Report ("PSR")[1] included significant detail about the videos posted by Mr. Meier and information about some videos'

---

[1]    The Probation Office used the 2024 edition of the Guidelines. The parties do not object to this choice on appeal. Accordingly, we also rely on this

production.  That included Mr. Meier's own claims on the site that he had produced videos, his comments discussing his production methods, and victim accounts describing what they recalled, with varying degrees of certainty, to be the online sexual encounters in which Mr. Meier recorded them.

The PSR stated that Mr. Meier "made a number of posts on [the site] and held himself out as a 'capper.'"  R., Vol. II, ¶ 32, at 59 (Presentence Investigation Report, revised Nov. 1, 2024) [hereinafter "PSR"].  The PSR gave general background on cappers:

> In order to induce minor victims to perform sexually on camera, cappers frequently impersonate a minor of the same or similar as [sic] to the intended victim.  For example, to induce boys to perform sexually on web camera, cappers often pretend to be a young girl approximately the same age as the boy victim.  They often will accomplish this by playing a video of such a girl, such that the boy victim thinks that he is having a sexual interaction with a girl his own age.

*Id.* ¶ 33.  Although no such bait-girl videos were recovered from Mr. Meier, his online representations and victims' accounts confirm that he impersonated girls and sometimes used prerecorded videos of girls to induce his victims.  For example, the video underlying Count Two included a caption stating that the victim "really wanted to do a sexy strip dance alongside my girl stripping for him."  *Id.* ¶ 40, at 61 (italicization omitted).  The video underlying Count Six included introductory text stating that the victim had "cam sex with my girl."  *Id.* ¶ 64, at 65.  In an exchange

---

edition in our analysis.

with another user, Mr. Meier described his methods, including "get[ting] a bait girl and mak[ing] the clips." *Id.* ¶ 73, at 70.

Various victims identified in Mr. Meier's videos recalled online sexual encounters that they thought were with females. Mr. Meier's argument primarily references two such victims' accounts. Victim C.L. "told an FBI interviewer that he was 14-15 years old in the content posted by [Mr. Meier]. He used Omegle [(a video chat website)] at that age to interact and masturbate with [those whom] he thought were attractive girls." *Id.* ¶ 67, at 66. Victim C.A. "told [the] FBI that the content posted by [Mr. Meier] depicted him when he was approximately 11 or 12 years old." *Id.* ¶ 68.

> He believed that the videos or images were taken during an interaction with a female he had met on Omegle and then chatted with over Skype. He said that the female looked older than him and they mutually masturbated on camera, but he did not recall seeing her face or learning her name. He clarified that he could not be entirely sure that this was the interaction that resulted in the material posted by [Mr. Meier], and that he had had two or three other sexual video interactions with a female.

*Id.*

The primary dispute at sentencing was whether Mr. Meier produced the videos that he distributed. The base offense level for child pornography distribution is ordinarily provided by § 2G2.2 of the Guidelines. But under the Production Cross Reference, a court instead applies the (usually more punitive) section for *production* of child pornography, § 2G2.1, if (1) "the offense involved causing[] . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of

5

such conduct," and (2) "the resulting offense level is greater than that determined"
under § 2G2.2.  U.S.S.G. § 2G2.2(c)(1).

The government argued that the Production Cross Reference applied to each
substantive count, i.e., Counts Two through Six.  As to the production element, the
government argued that "numerous factors in the draft PSR . . . lend reliability,
credibility, and corroboration to the defendant's online admissions that he produced
the child pornography that he shared."  R., Vol. I, at 191 (United States' Resp. to
Def.'s Obj. to PSR, filed Nov. 6, 2024).  The government cited various undisputed
facts from the PSR.  They included the fact that Mr. Meier had "held himself out to
be a 'capper' who maintained a 'productions index' of the material that he
produced."  *Id.* (first quoting PSR, *supra*, ¶ 32, at 59; and then quoting *id.* ¶ 34).  And
as the government noted, he repeatedly admitted or implied on the website at issue
that he produced the content that he posted.

Mr. Meier argued that these online representations were puffery intended to
raise his standing with other users on the site.  But the government pointed to what it
argued was a consistent "*modus operandi*" reflected in Mr. Meier's discussion of his
methods and especially in victims' accounts.  *Id.* at 51 (United States' Resp. and Obj.
to PSR, filed Oct. 24, 2024).  Specifically, the government offered the following
articulation—which the district court ultimately incorporated by reference—of
Mr. Meier's consistent method:

> The victim interviews summarized in the PSR likewise support the
> inference that the defendant was the producer of the content . . . .
> Several of the victims told law enforcement that they met a "girl"

online who directed them to disrobe and/or masturbate on webcam, but she either never appeared on camera or never spoke. Not only are these victim accounts consistent with one another, they are also consistent with the defendant's online suggestions that he enticed minor boys to perform sexually using images or video of a "girl."

The defendant's *modus operandi* was consistent throughout his sexual exploitation of the minor victims he met online; this, combined with numerous other factors set forth in the PSR . . . provides more than proof by a preponderance standard that he preyed upon these victims online and used them for the purpose of producing child pornography.

*Id.* at 50–51 (citations omitted).

The court agreed that Mr. Meier had produced the videos underlying each substantive count—the first element for applying the Production Cross Reference. The court noted various pieces of evidence supporting this conclusion, including "comments in each of the posts indicating that he produced the videos and used fake, quote, girls to entice the victims to engage in acts online," *id.*, Vol. III, at 53 (Tr. Sentencing Hr'g, dated Nov. 13, 2024), and that he "responded to [another] user who thanked him for capping, and he responded that it takes many hours, quote, to get a bait girl and make the clips," *id.* at 56. The court also "incorporate[d] in its findings the factual statements as set forth in the [PSR] *and in the government's briefing* on [the Production Cross Reference] issue." *Id.* at 57 (emphasis added).

The court also concluded that the Production Cross Reference's second element was met for each substantive count, i.e., that the offense level calculated under § 2G2.1 (the production section) was higher than under § 2G2.2 (the distribution section). Calculating an offense level under § 2G2.2 involves applying the greatest of various enhancements listed in § 2G2.2(b)(3):

7

(Apply the greatest):

\* \* \*

(B) If the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain, increase by **5** levels.

\* \* \*

(E) If the offense involved distribution [of child pornography] to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by **7** levels.

U.S.S.G. § 2G2.2(b)(3).  The court applied to each substantive count the five-level enhancement for distributing for valuable consideration and concluded that the offense level for Counts Two, Three, Four, and Six would be 39 under § 2G2.2.  The court calculated that the § 2G2.1 offense level for those counts would be 40.  For Count Five, the court calculated that the offense level would be 36 under § 2G2.2 and 38 under § 2G2.1.  The court therefore determined that the offense level for each substantive count was higher under § 2G2.1 than § 2G2.2.  Because the court found that Mr. Meier produced the videos distributed in each substantive count, and because the offense level was higher under § 2G2.1 for each, the court applied the Production Cross Reference to each.

Although Mr. Meier's Chapter Two offense levels calculated under §§ 2G2.1 and 2G2.2 were quite close, the Production Cross Reference significantly raised Mr. Meier's total offense level and Guidelines range because the Chapter Three grouping rules treat § 2G2.1 counts more punitively.  Specifically, where a defendant is convicted of multiple counts, the sentencing court calculates an offense level for

8

each count, "groups" the counts based on the rules in §§ 3D1.1–3D1.3, and assigns "units" to each group. *See id.* § 3D1.1(a). Depending on the resulting total number of units, § 3D1.4 instructs the court to add between zero and five levels to the group with the highest offense level, yielding the combined offense level. *See id.* § 3D1.4. The Guidelines group a defendant's § 2G2.2 counts together and assign one unit for that entire group. *Id.* § 3D1.2.[2] By contrast, the Guidelines group each § 2G2.1 count separately and assign one unit for each group. *Id.*

Moreover, in a situation where there are multiple minor victims, § 2G2.1 has a special rule that adds a unit for each victim. *See id.* § 2G2.1(d)(1) ("If the offense involved the exploitation of more than one minor, [§ 3D1.4] shall be applied as if the exploitation of each minor had been contained in a separate count of conviction."). If a defendant's grouped convictions add up to more than five units, § 3D1.4 adds five levels to his group with the highest offense level.

In this case, the district court grouped each count separately because § 2G2.1 applied to every substantive count, and the court counted Count Three as seven units based on the seven victims identified by the PSR for that count. Because there were more than five grouping units, the court increased the highest group's offense level (40) by five under § 3D1.4, yielding a combined offense level of 45. After decreasing by three levels for acceptance of responsibility, this resulted in a total

---

[2] Groups with offense levels more than four levels lower than the defendant's highest-level group are counted as less than one unit, but that does not apply to any of the counts at issue here. *See* U.S.S.G. § 3D1.4(b)–(c).

offense level of 42. Based on Mr. Meier's criminal history category of II, the court

calculated his Guidelines range as 360 months to life imprisonment and imposed a

420-month sentence.[3]

The district court entered judgment on November 25, 2024. On December 3,

2024, Mr. Meier appealed.

**B**

Mr. Meier's challenge revolves around what would have happened if the

district court, in calculating his hypothetical offense level under § 2G2.2—for

---

[3] Notably, the district court also advanced an alternative rationale for its sentence. In light of his view that the Production Cross Reference did not apply because he did not produce the videos, Mr. Meier argued to the district court that the correct Guidelines range was 210–262 months' imprisonment. Yet the district court stated that "[e]ven if the Court would have adopted the guideline calculation by the defendant, I would have varied upward to reach this same sentence, as I believe it is necessary, indeed essential, in order to protect . . . future victims [from] this pernicious conduct." R., Vol. III, at 88. The court pointed to "significant aggravating factors here that are not currently accounted for in the sentencing guidelines for child pornography trafficking"—namely, (1) that "the existence of the communities like the one that Mr. Meier involved himself with on the network increases the likelihood that other community members may engage in sex offending to create new child pornography images for trading online"; (2) that Mr. Meier displayed a high "level of sophistication . . . , not just in exploiting minors online[] . . . but [also] by avoiding detection by law enforcement," and (3) "that Mr. Meier was quite notorious and prolific online in his activity. . . . attract[ing] the attention of at least four different law enforcement agencies in three separate countries." *Id.* at 88–89. Because we conclude that Mr. Meier's challenge fatally stumbles on the second prong of the plain-error standard, we need not inquire whether the district court's alternative rationale provides an independent basis for rejecting his challenge, under the third prong of the standard. That is, we need not (and thus do not) inquire whether the alleged error would not have affected Mr. Meier's substantial rights (under the third prong of the plain-error standard) given that the district court said that it would have imposed the same sentence regardless of the Production Cross Reference.

purposes of comparing it to the offense level of § 2G2.1, as required by the second element of the Production Cross Reference—had applied the seven-level enhancement under § 2G2.2(b)(3)(E), instead of the five-level enhancement of § 2G2.2(b)(3)(B). That former, seven-level enhancement, quoted above, applies if the offense involved distributing child pornography to a minor to induce that minor to engage in sexual activity. U.S.S.G. § 2G2.2(c)(1). The parties agree, arithmetically, about the (favorable) consequences for Mr. Meier's total offense level and Guidelines range that would have materialized if the court had applied this enhancement to each substantive count. If the court had applied the seven-level enhancement for distribution to entice a minor's prohibited sexual conduct instead of the five-level enhancement for distribution for valuable consideration, Mr. Meier's § 2G2.2 offense level would have been 41 for Counts Two, Three, Four, and Six (as opposed to 39) and 38 for Count Five (as opposed to 36). Under that scenario, the Production Cross Reference would not have applied, because the offense level for each of those counts would not be higher under § 2G2.1 (40 and 38, respectively).

Although substituting the seven-level enhancement would have increased Mr. Meier's highest Chapter Two offense level to 41, this counterintuitively would have yielded a more favorable total offense level and Guidelines range by avoiding the grouping rules' more punitive treatment of § 2G2.1 counts. If Mr. Meier's substantive counts had remained under § 2G2.2, it appears he would not have received *any* increase under the grouping rules. Therefore, his total offense level

(after factoring in acceptance of responsibility) would have been 38—resulting in a Guidelines range of 262–327 months in custody.

## II

Mr. Meier raises one plain-error challenge on appeal. This challenge focuses on the required second element of the Production Cross Reference—that the offense level calculated under § 2G2.1 is higher than that calculated under § 2G2.2. Mr. Meier argues that the district court, in calculating the hypothetical offense level for each substantive count under § 2G2.2, failed to apply the greatest applicable enhancement listed under § 2G2.2(b)(3). In particular, he argues that the district court should have factored in the seven-level enhancement for distribution to sexually entice a minor. Mr. Meier's theory is that the court made factual findings that necessarily triggered the enhancement by adopting the PSR and the government's allegations regarding his *modus operandi*. Therefore, he argues that failing to apply the enhancement was clear or obvious legal error based on the enhancement's clear text. He argues that this error prejudiced him because it caused an increase in his Guidelines range, giving rise to a presumption of prejudice. Lastly, he argues that a clear or obvious error resulting in a higher Guidelines range also presumptively satisfies the fourth prong of plain error under our precedent.

## A

Because Mr. Meier did not object to the court's non-application of the (b)(3)(E) enhancement, he is correct to invoke plain error. *See, e.g., United States v. Henry*, 979 F.3d 1265, 1268 (10th Cir. 2020) (explaining that defendant's failure to

12

raise specific objection at sentencing limits appellate review to claim of plain error).

"A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). To establish plain error, a party must show: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court *may* exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quoting *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012)).

**B**

We confine our plain-error analysis to determining whether Mr. Meier has satisfied the second prong of the plain-error standard because the outcome of that analysis is determinative: It sounds the death knell for Mr. Meier's appeal. Specifically, we focus on whether the district court actually made the findings necessary to trigger the (b)(3)(E) enhancement. Because the court did not make such findings, we hold that it was not clear or obvious error for the court to refrain from applying that enhancement. And because Mr. Meier has not cleared the second plain-error hurdle, we may forgo further inquiry and affirm. *Id.* ("We will not reverse a conviction for plain error unless all four prongs of the plain-error test are

satisfied." (quoting *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008))).

**1**

The (b)(3)(E) enhancement applies "[i]f the offense involved distribution [of material involving the sexual exploitation of a minor] to a minor that was intended to . . . entice[] . . . the minor to engage in prohibited sexual conduct." U.S.S.G. § 2G2.2(b)(3)(E). Material involving the sexual exploitation of a minor includes videos and images of minors actually masturbating and lasciviously exposing their genitals, or simulating those acts. *Id.* cmt. n.1 (defining "sexual . . . exploitation" to include, inter alia, "conduct described in 18 U.S.C. . . . § 2251(a)–(c)"); 18 U.S.C. § 2256 (defining "sexually explicitly conduct" in 18 U.S.C. § 2251 as such). Mr. Meier argues that by adopting the PSR and the government briefing's allegations, the district court found that he distributed such material to a minor.[4] In particular, Mr. Meier focuses on three descriptions of bait-girl videos in the PSR and the government's assertion below that his *modus operandi* was "entic[ing] minor boys to

---

[4]    Mr. Meier argues that, so long as the district court found that he displayed child pornography to at least one of the minor victims identified in the PSR, that fact would be part of relevant conduct for each substantive count and trigger the seven-level enhancement for all of them. We assume without deciding that this is true.

perform sexually using images or video of a girl." Aplt.'s Reply Br. at 5 (quoting R., Vol. III, at 56).

At the outset, we clarify that Mr. Meier is not arguing that the district court committed clear or obvious factual error on the record before it when it failed to make factual findings that would necessarily trigger application of the (b)(3)(E) enhancement: that is, findings indicating that Mr. Meier had distributed child pornography to his minor victims to entice them. In other words, Mr. Meier's argument here is *not* that the record evidence compelled such factual findings, and that the court erred by failing to make them. Defense counsel explicitly disclaimed that theory at oral argument. Instead, Mr. Meier contends that the district court actually made the requisite factual findings that necessarily would trigger the application of the (b)(3)(E) enhancement, but the court legally erred by failing to apply that enhancement, and instead applying § 2G2.2(b)(3)(B)'s enhancement for distribution for valuable consideration, which triggered application of the Production Cross Reference.

For Mr. Meier's argument to work, the district court must have made findings with respect to both age and visible masturbation or lascivious display of genitals as to at least one of the bait-girl videos. *See* U.S.S.G. § 2G2.2(b)(3)(E); *id.* cmt. n.1.[5] It would not be enough that the district court found, for some encounters between

---

[5]    There are other sex acts that qualify as prohibited sexual conduct, but Mr. Meier does not rely on any other category.

minors and Mr. Meier's bait girls, the video depicted prohibited sexual conduct, while for other encounters the videos simply depicted a minor bait girl (i.e., without the prohibited sexual conduct). Instead, the record must show that the court made both findings—i.e., the depiction of sexual exploitation and the minor status of the bait girl—with respect to *the same* encounter with the minor victim. And of course, the court must have found that the underage sexual video at issue was in fact displayed *by Mr. Meier*. Upon careful consideration of the relevant portions of the record, however, we do not see the findings that Mr. Meier does.

**2**

Mr. Meier is correct that the district court adopted the PSR and the factual allegations in the government's brief. But those findings do not equal the factual predicate for the (b)(3)(E) enhancement.

Start with the PSR. The most definitive description by a victim of a bait-girl video potentially displayed by Mr. Meier came from C.A. C.A. recalled "an interaction with a female he had met on Omegle and then chatted with over Skype," in which "they mutually masturbated on camera." PSR, *supra*, ¶ 68, at 66. But C.A. did not definitively comment on the bait girl's age and in fact stated only that she "looked older than him." *Id.* Moreover, he was not sure whether that encounter was the one underlying Mr. Meier's video of him, noting that he had two or three other sexual video interactions with a female. The PSR neutrally summarized C.A.'s recollection and his caveats and took no position itself on the age of the bait girl described or on whether the encounter was the one in which Mr. Meier recorded C.A.

16

Adopting the PSR was therefore not a finding on either the bait girl's age or Mr. Meier's identity as the distributor of that bait-girl video.

Less definitive is the PSR's account of the bait-girl video that Mr. Meier used to entice the victim underlying Count Six. The only information regarding the bait girl is introductory text Mr. Meier put in the video, which stated that the victim had "cam sex with my girl." *Id.* ¶ 64, at 65. This statement is unclear both as to the bait girl's age and her actions on camera, so adopting it was not equivalent to finding the predicate for the (b)(3)(E) enhancement.

Even less definitive is the PSR's description of C.L.'s account. He stated that he "used Omegle [when he was 14–15] to interact and masturbate with [those whom] he thought were attractive girls." *Id.* ¶ 67, at 66. For at least two reasons, we do not see in the court's adoption of this general statement the findings that Mr. Meier perceives. First, the statement is at best vague regarding the general age of the girls C.L. encountered; all we have is his use of the word "girls." Second, the statement does not at all individually address the age of any female displayed by Mr. Meier specifically.

Mr. Meier next argues that the court's adoption of the government's briefing allegations was also a finding regarding the bait girls' ages. The adopted language cited by Mr. Meier comes from three paragraphs in the government's briefing. The first is a summary of information from the PSR about methods that cappers use generally, which included a statement that "when attempting to induce boys 'to perform sexually on web camera cappers often pretend to be a young girl

approximately the same age as the boy victim.'"  R., Vol. I, at 50 (quoting PSR, *supra*, ¶ 33, at 59).  Adopting this background information is, of course, not a finding regarding Mr. Meier's conduct.

The other two relevant paragraphs from the government's brief sought to support the inference that Mr. Meier produced the videos he posted by arguing that the victims' accounts were consistent with each other and with Mr. Meier's online descriptions of his methods:

> Several of the victims told law enforcement that they met a "girl" online who directed them to disrobe and/or masturbate on webcam, but she either never appeared on camera or never spoke.  Not only are these victim accounts consistent with one another, they are also consistent with the defendant's [(Mr. Meier's)] online suggestions that he enticed minor boys to perform sexually using images or video of a "girl."

> The defendant's *modus operandi* was consistent throughout his sexual exploitation of the minor victims he met online[] . . . .

*Id.* at 50–51 (citations omitted).  In adopting this language from the government's briefing, the court did not make any age finding about the bait girls, and more importantly, it did not speak to any particular video or make any claim that applied to every video.  Moreover, because the government was not making any precise claim about the bait girls' ages, and it was not making precise claims about what the bait girls were doing when they were on camera, the court necessarily could not adopt such claims from the government.  Even to the extent the government's brief is read to make general suggestions regarding the bait girls' ages, it was not claiming that every potential encounter described in the PSR was with a minor girl.  Critically, the government took no position regarding the encounter recalled with uncertainty by

18

C.A., in which he "mutually masturbated on camera" with a girl who "looked older than him." PSR, *supra*, ¶ 68, at 66. That is, the government nowhere took a position regarding whether the encounter was in fact the one underlying Mr. Meier's recording or regarding whether that "older" girl was a minor.

In summary, we are not persuaded that the district court made factual findings that, in the aggregate, would have amounted to a determination that Mr. Meier distributed material depicting sexual exploitation of a minor to a minor victim. Mr. Meier therefore has not shown that it was a clear or obvious error for the district court to forgo applying the (b)(3)(E) enhancement. Accordingly, he has failed to clear the second hurdle of the plain-error test, and his appellate challenge must fail.

**III**

For the foregoing reasons, we **affirm** the district court's judgment and sentence.